JAMES ED. HAGGERTY *et al.* Appellees, *vs.* LUCY L. HAGGERTY.—(B. W. KERR, Appellant.)

*Opinion filed April 22, 1915—Rehearing denied June 11, 1915.*

1. JUDICIAL SALES—*inadequacy of price, coupled with circumstances of unfairness, may justify setting aside a sale.* While inadequacy of price is not, alone, sufficient to justify a decree setting aside a judicial sale, yet where the inadequacy of price is established, circumstances indicating unfairness in the purchaser may authorize such decree.

2. SAME—*when decree setting aside sale is proper.* A decree setting aside a partition sale and ordering a re-sale under a proper guaranty of an advance in the bids is authorized, where it is shown that the only bidder was one of the persons who appraised the land, and that he arranged with two other men who had come to the sale intending to bid on the land, that they would enter into a partnership in purchasing the land and that he would bid it in in his own name at two-thirds of the appraised value.

APPEAL from the Circuit Court of Shelby county; the Hon. A. M. ROSE, Judge, presiding.

WHITAKER, WARD & PUGH, for appellant.

WILLIAM H. RAGAN, and GEORGE B. RHOADS, for appellees.

Mr. Justice Watson delivered the opinion of the court:

James Ed. Haggerty filed a bill in the circuit court of Shelby county, to the November term, 1913, seeking the partition of certain land between himself and Lucy L. Haggerty, and also praying for other relief in the bill. Such proceedings were had in the cause as resulted in a decree of partition being entered in said court, and upon the coming in of the report of the commissioners appointed to make said partition a decree of sale was entered fixing the time, place and terms of sale, and the master in chancery of said court carried out the directions of the decree, and on the 19th day of September, 1914, offered the property for sale. The real estate was appraised by the commissioners at the value of $6505, and at the sale the appellant, B. W. Kerr, bid the sum of $4337 for the land, being two-thirds of the appraised value, and there being no other bids the land was struck off and sold to him by the master and a report of the sale made to the court.

On October 2, 1914, objections were filed to the confirmation of the report of sale by said James Ed. Haggerty. In the objections it is alleged the property sold at the master's sale for the sum of $4337, being two-thirds of the appraised value, which was a grossly inadequate sum, the property being well worth $6500; that but one bid was made at the sale, it having been made by the appellant, who was one of the appraisers appointed to value the property; that there were a number of persons present at the sale but they did not bid; that some conference was had among the proposed bidders in connection with the sale, the exact nature of which is to the objector unknown; that said conference depreciated the price bid at said sale and lessened the number of bidders, so that great loss was suffered by the owners of the land by reason of the grossly inadequate price bid at the sale; that objector caused investigation to be made and was informed and believed five or six persons

would be present at said sale and bid against each other, and relying upon the same did not arrange for a bid to be made for himself. Objector pledged to the court his interest in the real estate, which is one-half thereof, to guarantee upon a re-sale an increased bid of $1000 over and above the price at which the land was bid in at the master's sale and agreed to start the bidding at $5337, and to secure the same tendered a bond in the sum of $1000 in that behalf. The objector further stated the appellant, the purchaser at the sale, had expended some money for interest on one-third of the purchase price, and set forth a willingness that the actual expenses of appellant should be taxed as costs. The objections were sworn to. Later, Lucy L. Haggerty, upon the petition of herself and said James Ed. Haggerty, joined in the objections filed by him, and presented her consent to be bondsman for said James Ed. Haggerty in the matter of guaranteeing an increase of $1000 on the bid in case of a re-sale being ordered, and she pledged her distributive share of the real estate, being one-half thereof, to make her guaranty effective. A bond was given as tendered. It is shown by the proofs that James Ed. Haggerty resides at Sonyea, New York, and Lucy L. Haggerty at Los Angeles, California.

Notice was given to appellant of the filing of the objections to the master's sale to him and that the same would be taken up at the November term, 1914, of the court. At the November term amended objections were filed to the master's report of sale, alleging, in addition to what is above set forth, that the objectors have learned the financial condition arising by reason of the disturbed condition in the business world in connection with the war in Europe caused a condition in the money market in Shelby county at the time of the sale which greatly injured and hampered prospective bidders in obtaining money; that the said business condition was unexpected and unprecedented and was

a surprise to objectors, and that as objectors lived a long distance from Shelby county they were not acquainted with such condition and were unable to take steps to protect themselves; that the sale was held on the 19th day of September, 1914, and was advertised therefor for five weeks prior thereto; that the European war commenced about August 1, 1914, and objectors were not advised of such condition in Shelby county, and the effect thereof, so as to protect themselves.

The appellant filed an answer to the objections, admitting the purchase by him of the land at the sum of $4337 and denying the price was inadequate, insisting the bid was two-thirds of the appraised value; admitting he was one of the appraisers, and that in bidding at the sale he was bidding for himself, Dr. Bolt and Luther Kessler; that the bidding was fair and open, and there was no collusion or secret arrangement whereby to lessen activities or prevent others from bidding; denying there was an attempt on the part of himself or anyone else, so far as he knows, to prevent anyone from bidding; denying the property sold for an inadequate price, and asserting he is not advised as to why objectors did not have their attorneys or other person present to bid; asserting he is not advised as to what was known by objectors as to European conditions but that they were duly advised as to the date of the sale; that the purchaser is not responsible for the failure of bidders to appear and bid at the sale.

Thereupon a hearing was had by the court, and it was proven that appellant was present on the day of the sale of the land, just before the sale, and while there Dr. Bolt and Luther Kessler, both of Herrick, Illinois, came to the court house for the purpose of bidding on this land. It was shown by the testimony of Dr. Bolt that before going to Shelbyville to this sale he made efforts at the bank in his home town to get money for use at this sale but the

banker notified him they had no surplus at that time. The witness and Kessler then went to Pana, where arrangements were made to get the money if they should make the purchase of the land. They then went by automobile from Pana to Shelbyville to attend the sale, and when they arrived at the court house they found appellant there. It was the intention of the witness and Kessler to bid together, and they agreed they would bid but two-thirds of the appraised value of the land. At the time they arrived at the court house in Shelbyville they had had no talk with appellant but they there talked to him. The conversation related to forming a partnership in the purchase of this land, and it was agreed among them, finally, and just before the sale began, they would all go together in the purchase of the land, and it was agreed they would bid only two-thirds of the appraised value thereof. It was agreed appellant should do the bidding for all. The witness states the sale was then called and the appellant made the only bid, offering for the land two-thirds of its appraised value, and the same was, when no other bids were made, struck off and sold to appellant in his own name. Solicitors for the objectors came and asked the witness and the other parties to the partnership if an agreement had been entered into or a combination made, and were told nothing of that kind had occurred. Kessler also was called as a witness, and his statements correspond with those of Dr. Bolt. Appellant was also called as a witness, and testified he was one of the appraisers who were appointed by the court, and confirmed the testimony of Dr. Bolt and Kessler as to what occurred just prior to the sale relative to the formation of the partnership and said he bought the land for all three. Frank Fogle was also sworn as a witness, and testified the land in question was worth $7000, and said if he had known of the sale he would have bid that sum but was not sure he could comply with the terms of the sale as to the deferred payments.

Some evidence was introduced to show the effect of the European war and consequent results all over the country and upon the conditions in Shelby county. The two appraisers, beside appellant, who appraised the land testified they regarded the value placed by them upon the land of $6505 as the fair cash market value of the same.

Upon the conclusion of the testimony the chancellor entered a decree sustaining the objections to the report of sale, set aside the sale, ordered a re-sale of the property, and directed the money paid by the purchaser to be paid back to him, together with interest thereon and $25 expense incurred by the purchaser. To the rendition of the decree appellant excepted and prayed and perfected this appeal, thus bringing the matter here for review.

That the bid of the appellant for the land in question is an inadequate one is to our minds quite clear. The value of the land was fixed by the three appraisers, one of whom was appellant, at $6505, while the bid of appellant was for the sum of $4337, being $2168 less than the amount of the appraisal and at least that much less than its fair cash value as shown by the proof introduced on the hearing. Inadequacy of price is not, alone, sufficient to justify the setting aside of a judicial sale, but where inadequacy of price is once established, circumstances indicating unfairness in the purchaser will justify a decree setting aside the sale. (*Miller* v. *McAlister,* 197 Ill. 72; *Mansfield* v. *Wallace,* 217 id. 610.) The fact testified to by all the witnesses who were heard on the point, that appellant went to the place of the sale and there met the other men who had come there for the sole purpose of bidding on the land and there agreed with them to enter into a partnership with them as to the purchase of the land in his own name and for an agreed price, was such a circumstance as justified the court in setting aside the sale. Such acts clearly tended to limit the number of bidders at the sale as well as the amount to be bid.

The action of the chancellor in refusing approval of the report of sale and ordering a re-sale was in accord with the law and the facts, and the decree is therefore affirmed.

*Decree affirmed.*